UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR MICHELLE K. SAVU, MD,

   *Plaintiff*,

v.                                                  Case No.  **SA-22-CV-00075-JKP**

UNITED STATES OF AMERICA,
DENNIS R. MCDONOUGH, UNITED
STATES SECRETARY OF VETER-
ANS AFFAIRS;

   *Defendants*.

<u>**MEMORANDUM OPINION AND ORDER**</u>

     Before the Court is Dr. Michelle K. Savu's Petition for Judicial Review in an administra-

tive appeal of an agency decision by Defendants, the United States of America and Denis R.

McDonough, United States Secretary of Veterans Affairs ("the VA").[1] *Pet. Judicial Review and*

*First Amended Petition*, *ECF Nos. 1,30*. Upon consideration of the First Amended Petition, ar-

guments of the parties at a hearing, and the briefing submitted, the Court concludes the VA acted

in an arbitrary and capricious manner when it reversed the second unanimous Decision of the

Disciplinary Appeals Board that is pertinent to this matter. Accordingly, the Court vacates the

VA's reversal (dated September 3, 2021) of the Disciplinary Appeals Board's Decision. Upon

this ruling in Dr. Savu's favor and the VA's acknowledgment[2], the VA is hereby ORDERED to

immediately issue a Void Report to the National Practitioner's Data Bank. This Void Report or

---

[1] For ease of reference, the Court will refer to the named Defendants, the United States of America and Denis R.
McDonough, United States Secretary of Veterans Affairs, as a single entity.

[2] At the hearing and in its brief, the VA acknowledged, "If, however, the Court rules for the Plaintiff, the [VA]
acknowledge[s] and accept[s] that the Court may direct them to issue a void report to the NPDB." *ECF No. 36, p. 8*.

any needed supplemental submission must have the effect of withdrawing from the National Practitioner's Data Base all reference or inference to Dr. Savu and any and all matters related to this litigation, the underlying facts, and disciplinary proceedings forming the basis of this action and the previous action, *Savu v. United States*, No. SA-18-CV-00993, 2021 WL 1615562, at *2 (W.D. Tex., Apr. 26, 2021). The VA shall issue this Void Report to the National Practitioner's Data Bank within three (3) days of the date of this Opinion and shall ensure all reference to Dr. Savu is immediately cleared from the National Practitioner's Data Bank within seven (7) days of the date of this Opinion. The parties shall jointly or independently advise this Court within 10 days of the date of this Opinion and Order whether the VA issued a Void Report and all necessary documentation to the NPDB and whether the VA ensured all reference to Dr. Savu and the disciplinary proceedings, administrative proceedings, and the litigations are removed from the NPDB records. This case shall not be closed until the VA complies with this Court's Order, and the Court retains jurisdiction to enforce the VA's compliance. The VA is hereby warned that failure to comply with this Court's Order shall be grounds for sanctions. *See* Fed. R. Civ. P. 11.

### Undisputed Factual and Procedural Background[3]

This case arose, initially, from revocation of Dr. Savu's privileges to practice medicine with the VA and her removal from federal service in early 2017.

Dr. Savu completed fellowship training in robotic surgery, and subsequently joined the VA in 2003, transferring to the San Antonio South Texas Veterans Health Care System in 2008. Dr. Savu twice served as Section Chief of General Surgery during her tenure at this facility. In her Petition for Judicial Review, Dr. Savu alleges she began experiencing problems with her

---

[3] This Court will not provide record cites for the supporting undisputed factual and procedural background. These facts are undisputed and derived from the pleadings and administrative record filed in the initial case and cited in this Court's Memorandum Opinion and Order disposing of that matter. No. SA-18-CV-00993, 2021 WL 1615562, at *2 (W.D. Tex., Apr. 26, 2021). If the text presents argument or disputed facts, this will be indicated.

employment in December 2015 when Dr. William Perry, the Chief of Surgery, requested she pressure a senior surgeon to retire due to his age. Upon consultation with EEOC, Dr. Savu refused to comply with the request. In early 2016, Dr. Savu, in her role as Section Chief counseled Dr. Elihu Ledesma for his refusal to participate in mandatory meetings. Dr. Ledesma refused and, instead, complained to Dr. Perry. Dr. Savu alleged Dr. Perry told her to "back off" regarding this issue. Dr. Savu then contacted Dr. Julianna Flynn, the Chief of Staff, who approved the counseling and informed Dr. Perry of the same. Following this incident, Dr. Savu also counseled Dr. Ledesma regarding inappropriate comments made to her during a meeting with physicians, residents, nurses, and medical students. Dr. Savu alleges Dr. Ledesma indicated he would get even with her by reporting her to the "highest authority." Fearing retaliation, Dr. Savu contacted a VA attorney to discuss the issues. The attorney arranged a meeting with Dr. Perry and Dr. Flynn.

On May 20, 2016, Dr. Savu was asked to attend an Administrative Investigation Board hearing ("AIB"). Following the AIB Hearing, on June 15, 2016, Robert Walton, Director of the South Texas VA Hospital, notified Dr. Savu her privileges were suspended based upon her deficiencies in clinical decision-making during pre-operative, operative, and postoperative management of three (3) of her patients.

Following her suspension, the VA, through clinical peers, conducted a comprehensive review of Dr. Savu's surgical practice consisting of a sample of her laparoscopic, colonoscopy, and general surgery cases. Upon completion of the comprehensive review, the Clinical Executive Board[4] (CEB) met to review the findings and make recommendations. Finding "substandard care and professional incompetence," the CEB recommended revocation of Dr. Savu's privileges.

---

[4] The Clinical Executive Board consists of the clinical-service chief leadership. As part of its duties, the CEB approves privileges for physicians in the South Texas Veterans Health Care System and investigates challenges to these privileges, which may result in revocation or suspension.

Given this recommendation, Dr. Flynn removed Dr. Savu from federal service. Upon receiving notice of the proposed removal, Dr. Savu timely responded, detailing the reasons she should not be removed. The VA removed Dr. Savu from employment effective February 7, 2017.

Dr. Savu proceeded through the administrative review process and appealed to the Disciplinary Appeals Board ("DAB"). On or about April or May of  2017,[5] after a two-day hearing, the DAB unanimously concluded there existed no evidence of negligence necessitating removal and recommended Dr. Savu's reinstatement. Required under 38 U.S.C §7462(d)(1) to execute the Decision by the DAB within ninety (90) days, the VA responded on July 20, 2017, at which time, Dr. Miguel Lapuz, the VA's Acting Principal Deputy Undersecretary for Health, decided the DAB decision "appeared to him to be contrary to the evidence," and he remanded the matter back to the DAB with the instruction to re-evaluate.

On or about September or November of 2017[6], the DAB concluded, again, there existed no evidence of negligence necessitating a penalty for removal. However, with a minor difference from its original findings, the DAB found one of the case references to be valid based upon Dr. Savu's confessed pre-operative and intra-operative decision-making. Based upon this finding, the DAB concluded a 1-day suspension of Dr. Savu's clinical privilege was appropriate. The DAB again unanimously recommended the reversal of the penalty of removal from federal service and the re-institution of Dr. Savu's privileges. On November 29, 2017, the VA, through Dr. Lapuz, issued a reversal of this unanimous recommendation because Dr. Lapuz "personally" felt the DAB's decision was "clearly contrary to the evidence" under 38 U.S.C. §7462 and the VA

---

[5]  The exact date of this decision is disputed and not clear from the Administrative record; however, this issue is immaterial to the matter before the Court in this action.

[6] The exact date of this decision is disputed and not clear from the Administrative record; however, this issue is immaterial to the matter before the Court in this action.

Handbook 5021, Part V, Chapter 1, paragraph 9(e)(1)(a). Thereby, the VA upheld Dr. Savu's removal from federal service and suspension of privileges.

Dr. Savu, then, filed her original appeal of the administrative proceedings in federal court, filing a Petition for Judicial Review on September 24, 2018: Case No. SA-18-CV-00993-JKP. In this Petition, Dr. Savu argued the VA, acting through Dr. Lapuz, acted in an arbitrary and capricious manner when it reversed the DAB's unanimous Decision to reinstate Dr. Savu's privileges, and the decision was not supported by substantial evidence, pursuant to 38 U.S.C. §7462. Upon review, on April 26, 2021, this Court vacated the VA's reversal of the DAB's recommendation, finding the VA, through Dr. Lapuz, acted in an  arbitrary and capricious manner when he failed to apply the correct and appropriate standard of review and failed to state the reasons for his decision and action. This Court remanded the case for further proceedings to comply with the appropriate standard of review.

Upon remand, on September 03, 2021, a new Principal Deputy, Dr. Mark T. Upton, rendered a decision, again, reversing the DAB's unanimous Decision. Following the VA's decision, through Dr. Upton, on January 28, 2022, Dr. Savu filed this second case in federal court, filing a Petition for Judicial Review based upon the same supporting facts and procedural background. In this case, Dr. Savu requests this Court reverse and render the VA's decision, through Dr. Upton, to not follow the DAB's second decision upon remand. In this action, Dr. Savu originally requested this Court: (1) Overturn the decision of reversal of the DAB's unanimous recommendation; (2) Order the DAB's recommendation be restored; (3) Order the reinstatement of Dr. Savu's clinical privileges; (4) Order the record of the suspension of Dr. Savu's clinical privileges be expunged from her permanent record, except for the one-day suspension as recommended by the Disciplinary Appeals Board; (5) Order the South Texas Veterans Health Care System in San

Antonio, Texas retract all the reporting of Dr. Savu to the National Practitioners Data Bank, and; (6) Order compensatory back pay under the Back-Pay Act, 5 U.S.C. §5596.

Following significant litigation, the parties participated in mediation and entered a settlement agreement on all but one request for declaratory and injunctive relief: this Court order the South Texas Veterans Health Care System in San Antonio, Texas, retract all reporting of Dr. Savu to the National Practitioners Data Bank (NPDB).[7] This sole remaining matter is now before this Court.

During mediation, the parties agreed Dr. Savu could file an Amended Petition for Judicial Review to include only this one remaining request for relief. At the hearing before this Court, the parties represented, and agree, that even with settlement of all other requests for relief, this Court's review pursuant to the First Amended Petition for Judicial Review must focus on whether the VA's decision to reverse the DAB's second Decision was arbitrary and capricious pursuant to 38 U.S.C. § 7462(d)(2). The Court's focus is not whether the VA's remaining inaction of refusal to retract all reporting of Dr. Savu to the NPDB is arbitrary and capricious. This Court agrees with the parties' agreed assessment of the focus of the Court's analysis.

## Standard of Review

A Petition for Review of a decision by the VA presents a tricky review of decisions made at multiple tiers and determination whether the application of differing standards of review on each tier was appropriate.[8]

To begin, at the first tier of review, the DAB must examine the totality of evidence presented on each of the Charges of Deficiency asserted by the VA and each of the specifications

---

[7] The NPDB is a collection of information related to physicians' professional competence and conduct, as well as adverse actions such as removal from service and revocation of privileges.

[8] This Standard of Review is specific to cases involving the VA.

and cases presented under each Charge of Deficiency. At this tier, the VA has the burden to prove each Charge against Dr. Savu by a preponderance of the evidence.

At the next level of review, the VA representative, here, Dr. Upton, will review the DAB's decision on each Charge. If the VA representative finds the DAB decision to be clearly contrary to the evidence or unlawful, the VA representative may "(A) reverse the decision of the [DAB], or (B) vacate the decision of the [DAB] and remand the matter to the [DAB] for further consideration." 38 U.S.C. § 7462(d)(2). As articulated in this Court's previous opinion in this matter: "'clearly' means 'without doubt; obviously'. . . 'contrary to the evidence' means 'conflicting with the weight of the evidence presented at a contested hearing.'" *Savu*, No. SA-18-CV-00993, 2021 WL 1615562, at *2. Accordingly, the VA representative may reverse the DAB's decision as clearly contrary to the evidence only if it would be obvious to an ordinary person that the DAB's decision conflicted with the weight of the evidence. *Id.* (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Next, at this present level of review upon a final decision by the VA of removal from service for conduct involving professional conduct or competence, a VA employee may seek judicial review. The reviewing court

> shall review the record and hold unlawful and set aside any agency action, finding, or conclusion found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule, or regulation having been followed; or (C) unsupported by substantial evidence.

38 U.S.C. § 7462(f)(2).

Under § 7462(f)(2)(A), the arbitrary-and-capricious standard of review, the reviewing court is limited to the task of reviewing whether the VA "examine[d] the relevant data and ar-ticulate[d] a satisfactory explanation for its action, including a 'rational connection between the

facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). To pass this review, the VA must clearly articulate a logical bridge between the evidence presented to the DAB and its conclusion. *See Burlington Truck Lines, Inc.*, 371 U.S. at 168.

While review of the evidence presented to the DAB and contained in the administrative record is necessary, this inquiry is intended to inform the reviewing court of the propriety of the agency's decision, not to enable the court to make its own decision. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). The reviewing court may only assess the VA's decision-making process and may not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *Louisiana Envtl. Action Network v. U.S. E.P.A.*, 382 F.3d 575, 582 (5th Cir. 2004).

Finally, in conducting arbitrary-and-capricious review, only if the reviewing court determines the VA "relied on factors that Congress did not intend it to consider, failed to consider an important aspect of the problem, or failed to articulate a satisfactory connection between the facts found and the choice made" may the reviewing court find the VA's decision to be invalid. *Texas Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 934 (5th Cir. 1998) (citing *Motor Vehicle Mfrs. Assn.*, 463 U.S. at 43. The reviewing court must "reject the agency's explanation for a decision that runs counter to the evidence presented, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't Health & Human Servs.*, 985 F.3d 472, 475 (5th Cir. 2021). "Put simply, we must set aside any action premised on reasoning that fails to account for 'relevant factors' or evinces 'a clear error of judgment.'" *Id.*; *see also Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989).

**Discussion**

**1.  Issue Before the Court and Arguments of the Parties**

This Court held a hearing to discuss the procedural posture of this matter following medi-

ation and the filing of the Amended Petition for Judicial Review. At this hearing, the parties

agreed this matter is not moot, as resolved by the mediation, because the matter of the retraction

of reporting to NPDB is still a live case or controversy before this Court. At the hearing, the par-

ties agreed this Court's determination whether it will order the VA to retract all reporting to the

NPDB related to Dr. Savu hinges upon resolution of the issue whether the VA's decision,

through Dr. Upton, to not uphold the DAB's unanimous recommendation was invalid for any of

the reasons stated in 38 U.S.C. § 7462(f)(2). Should this Court determine Dr. Upton's decision

was invalid, the parties agree this Court necessarily may order the VA to withdraw all reporting

of Dr. Savu to the NPDB, that is, to issue a void report.

At the same hearing, the VA represented to the Court that even though the parties settled

the issues of reinstatement of Dr. Savu's clinical privileges and payment of back pay, it is

"against VA internal policy" to issue a void report without a Court order to do so. The VA also

represented to the Court that statutory authority supported this internal policy to refuse to retract

any reporting to the NPDB without a Court Order. The Court allowed the VA to file an Amended

Answer and to provide additional briefing on the authority relied upon that supports its refusal to

issue a void report, authority that precludes its ability to do so without a court order, and briefing

to support its position that Dr. Upton's Decision was valid. The VA did supply this briefing with-

in its Amended Answer; however, this briefing contains only conclusory argument and no au-

thority to support its positions. Specifically, the VA contends, only, "its decision is in accordance

with the law and was not arbitrary, capricious or an abuse of discretion, and is supported by sub-

stantial evidence as contained in the administrative record." However, should the Court find in Dr. Savu's favor on this issue, the VA "acknowledge[s] and accept[s] that the Court may direct them to issue a void report to the NPDB." *ECF No. 36, p. 8.*

Dr. Savu contends Dr. Upton did not employ the "clearly contrary to the evidence" standard, and the explanations given for reversal of the DAB decision run counter to the clear weight of the evidence presented to the DAB. For this reason, the VA's reversal of the DAB's Decision was arbitrary and capricious.

### 2. Issue of Mootness

Although the parties agree and represent to this Court that the matter before it is not moot, this Court must examine its jurisdiction *sua sponte. Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1998); *Union Planters Bank Nat. Ass'n v. Salih,* 369 F.3d 457, 460 (5th Cir. 2004). Article III of the Constitution requires the existence of a case or controversy to support a federal court's subject matter jurisdiction. U.S. Const., Art. III, § 2, cl. 1; *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 395 (1980). Following this directive, the "[m]ootness doctrine requires that the controversy posed by a complaint be present 'throughout the litigation process.'" *Baccus v. Parrish,* 45 F.3d 958, 961 (5th Cir. 1995). Events occurring both before and after a case is filed may negate a party's legally cognizable interest in the outcome of the case and thereby render a plaintiff's case or claim moot. *Id.*; *see also Geraghty,* 445 U.S. at 396. A cognizable legal interest in the outcome of a case is an injury traceable to the defendants that is susceptible to some judicial remedy. *Baccus,* 45 F.3d at 961; *Hollon v. Mathis Indep. Sch. Dist.,* 491 F.2d 92, 93 (5th Cir. 1974)(per curiam). Consequently, the mootness of a case or controversy terminates the jurisdiction of the federal courts and requires dismissal of the case. *Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 335 (1980).

Upon examination, the Court concludes the VA's refusal to issue a void report to the NPDB constitutes a live cognizable legal interest in the outcome of this case, as the existence of this information in the NPDB of revocation of clinical and surgical privileges, removal from federal service, allegations of deficient practice, and ensuing litigation create an injury to Dr. Savu that is traceable to the VA and that is admittedly susceptible to judicial remedy. *See Baccus*, 45 F.3d at 961; *Hollon*, 491 F.2d at 93. For this reason, the Court concludes the matter before the Court is not moot, and this Court holds subject matter jurisdiction to adjudicate the issue and sole remaining requested remedy. [9]

### 3.  Whether Dr. Upton's Decision was Arbitrary and Capricious under 38 U.S.C. § 7462(f)(2)(A):

The parties agree the VA introduced eight cases within three Charges of Deficiency to the DAB to support its removal of Dr. Savu from federal service and revocation of privileges. The DAB concluded,

> In conclusion, when the Board [the DAB] read the evidence and heard the testimonies, the board found the evidence for negligence necessitating the penalty of removal not to be present. The board upheld one specification based on poor decision making pre-operatively and intraoperatively. When looking at each case, the board looked at the evidence, or lack of. The board heard the testimonies very carefully. The board also considered 8 factors as stated above in reaching its decision. While the board upholds specification-8 of charge-1 and recommends a 1-day suspension, the board unanimously recommends reversal of the penalty of removal, and re-institution of the clinical privileges of Michelle Savu, MD.

Dr. Upton's reversal of the DAB's Decision, and thereby removal of Dr. Savu from federal service and revocation of her privileges, was based upon three of these original eight cases in two of the three presented Charges: (1) Charge 1, Substandard Care, Specification 1,

---

[9]  Persuasively, the Court agrees with the D.C. Circuit's conclusion that "when administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief….The Administrative Procedure Act requires every agency 'within a reasonable time … proceed to conclude any matter presented to it,' 5 U.S.C. § 555(b) (Supp. V, 1969), and provides that the reviewing court shall 'compel agency action unlawfully withheld or unreasonably delayed.'" *Environmental Defense Fund, Inc. v. Hardin*, 428 F.2d 1093, n.29 (D.C. Cir. 1970)(cases cited therein); 5 U.S.C. § 706(1) (Supp. V, 1969).

Case #4; (2) Charge 1, Substandard Care, Specification 4, Case #9, and; (3) Charge 2, Failure to Appropriately Plan Care, Specification 3, Case #8.[10]

Given these decisions at each tier of administrative review, this Court must uphold Dr. Upton's reversal of the DAB's Decision if he articulates how it would be obvious to an ordinary person that the DAB's Decision conflicted with the weight of the evidence. *See Burlington,* 371 U.S. at 168. This Court must review the administrative record to determine whether Dr. Upton "relied on factors that Congress did not intend [him] to consider, failed to consider an important aspect of the problem, or failed to articulate a satisfactory connection between the facts found and the choice made." *Univ. of Tex. M.D. Anderson Cancer Ctr.*, 985 F.3d at 475.

### a.   Charge 1: Substandard Care, Specification 1, Case #4:

In this specific Charge, Dr. Upton concludes the DAB's findings are clearly contrary to the evidence because the DAB "failed to fully assess the specification and underlying supporting evidence." Dr. Upton explains the DAB focused solely on the allegations of Dr. Savu's "inexperience using the robot" and a "phone call for hospice;" however, the VA based this Charge on additional allegations, such as, poor case selection for this robotic procedure, a Gastroenterology recommendation that this procedure not be performed on this patient, and the resulting hole in the patient's esophagus. For this reason, Dr. Upton concludes the DAB incorrectly narrowed its deliberation and receipt of evidence to solely these two allegations.

Contrary to Dr. Upton's conclusion, review of the Administrative Record reveals the DAB did understand, articulate, and receive evidence pertaining to all these additional allegations; the DAB simply did not address each individual allegation, specifically, in its

---

[10] The DAB's finding of substandard care based upon Dr. Savu's admission, and its recommendation of 1-day suspension, was related to Charge 1, Substandard Care, Specification 8, which is not included in the three cases Dr. Upton relies upon in his reversal. Because this Charge is omitted, it is presumed Dr. Upton did not consider this unmentioned or analyzed Charge as part of his decision of reversal.

finding. Consequently, Dr. Upton failed to properly review and assess the entirety of the evidence presented and the full scope of the DAB's receipt of evidence and understanding of the Charge and supporting specifications. For this reason, Dr. Upton's decision runs counter to the evidence before the DAB and is dispelled by the DAB's receipt of evidence and consideration of the full spectrum of allegations supporting the Charge.

Most importantly, in its articulation of its reasoning, the DAB continually and repeatedly emphasized the VA failed to prove the Charge and the supporting allegations because it failed to introduce the patient's medical records. The allegations, themselves, especially in light of the conflicting evidence presented, required that the DAB review the patient's medical records, particularly the notes regarding the patient's condition at the time of the robotic surgery and whether the patient considered the risks and requested the robotic surgery over hospice care. These matters are directly related to the allegations the VA contends the DAB did not consider. However, the VA did not produce any of the patient's medical records to allow the DAB to resolve the conflicting evidence or verify Dr. Savu's testimony. Thus, the DAB had before it only the conflicting reports of the two outside reviewers and testimonies of Dr. Savu and her supporting witness. The VA offered no rebuttal evidence to counter this testimony or establish a preponderance of the evidence to support this Charge. In its Decision, the DAB articulated and discussed only the evidence presented, and noted the fatal omission of evidence necessary to satisfy the VA's preponderance-of-the-evidence burden of proof.

Dr. Upton did not consider this omission of critical medical records or failure to rebut Dr. Savu's evidence to support the Charge in his assessment and weight of the evidence. Dr. Upton based his decision primarily on his incorrect conclusion that the DAB improperly narrowed its focus of the Charge allegations. Review of the evidence presented to the DAB reveals the parties

provided conflicting evidence. However, even if the conflicting evidence was evenly weighted, the VA failed to introduce evidence critical to meeting its preponderance-of-the-evidence burden of proof. Dr. Upton looked only to the perceived scope of the Charge, yet failed to consider evidence lacking that was necessary to meet the VA's burden of proof. Therefore, his conclusion that the DAB's decision clearly conflicts with the weight of evidence is misfocused and premised on reasoning that runs counter to the evidence.

For these reasons, this Court concludes Dr. Upton's Decision was premised on reasoning that fails to account for relevant factors and evinces a clear error of judgment. *See Marsh*, 490 U.S. at 378; *Univ. of Tex. M.D. Anderson Cancer Ctr.*, 985 F.3d at 475. Consequently, this Court must set aside Dr. Upton's Decision with regard to this Charge as arbitrary and capricious.

### b.   Charge 1: Substandard Care, Specification 4, Case #9

In this specific Charge, Dr. Upton concludes the DAB improperly evaluated one of the two reviewers' ratings of the case. On this reason, alone, Dr. Upton concluded the DAB's assessment of the evidence was flawed, and therefore, the DAB's conclusion that the VA "did not prove this specification by a preponderance of the evidence is clearly contrary to the evidence." [AR p.37]

Review of the Administrative Record and the parties' undisputed recitation of the evidence reveals peer reviewer, Dr. Nicholl, rated the case a III[11], and testified before the DAB that the procedure performed by Dr. Savu was "medical experimentation" and "violates research protocols and patient rights." Dr. Nicholl did testify the procedure was ultimately successful for the patient. Peer reviewer, Dr. Bower, initially rated the case a II[12] during his preliminary

---

[11] It is undisputed this rating means, "most experienced, competent providers would have handled the case differently in one or more of the listed aspects of care."
[12] The meaning of a II rating is not known; however, it is undisputed this rating is less of a risk and favors Dr. Savu over a III rating.

assessment of all of the medical records supporting the Charges; however, he later changed his rating to a III during his testimony at the internal investigation by the CEB. Dr. Bower did not testify before the DAB, and the VA did not produce the CEB's meeting transcript for the DAB to determine the basis of the rating change. It is undisputed the DAB concluded Dr. Bower's initial rating of II was the true, final rating because the change in rating occurred while he was being questioned by the CEB, an unsettling and confrontational situation. Even with the change in rating, the DAB noted Dr. Bower did not change his perception of the procedure as a modification of the Nissen procedure that Gastroenterology contra-indicated for this patient, and the modified procedure was ultimately successful. Dr. Bower still perceived the procedure "not substandard." In its Decision, the DAB thoroughly discussed the discrepancy in the two reviewers' rating assessments, concluding the two reviewers' disagreement, even if the ratings were both a III, to be "vast," and "[a] 3rd reviewer from outside the hospital would have been ideal" to help the DAB resolve the discrepancy, and could have tipped the conflicting evidence to satisfy the VA's burden of proof.

The parties do not dispute the Administrative Record reveals, and the DAB findings articulate, Dr. Savu testified before the DAB, stating she presented the plan for the procedure to the patient in the pre-surgery conference in the presence of her colleagues and residents; none of the attending surgeons objected to the plan; she tailored the surgery to the specific needs of the patient, and; this technique is performed successfully by Dr. Lee Swanstrom, a renowned surgeon in Portland, Oregon, with whom she consulted and discussed the plan. Dr. Savu testified that other surgeons were aware of the procedure, even though her VA colleagues were not, and this lack of knowledge does not render her technique or care to be substandard. The VA did not present any testimony, other than Dr. Nicholl's outside assessment, to rebut Dr. Savu's

explanation of the events leading to the surgery, the patient's condition and specific needs, and her reasoning for the technique used.

Again, the VA did not produce the medical records of the subject patient for the DAB to assess the condition of the patient at the time of surgery, determine what was discussed in pre-surgery conference with the patient, determine if the patient understood and requested the procedure, determine who attended the conference, and determine if Gastroenterology contra-indicated the modified procedure performed. Consequently, the evidence before the DAB consisted of the conflicting case-rating assessments of the two peer reviewers, Dr. Nicholl's testimony pertaining solely to his case-rating report, and Dr. Savu's testimony.

Again, the VA's failure to produce critical and important evidence to satisfy its burden of proof and to resolve critical conflicting evidence cannot be beneficial to its position upon Dr. Upton's review. Dr. Upton made his determination by weighing the evidence presented; yet failed to consider the VA's burden of proof and whether the evidence presented satisfied this burden. Dr. Upton cannot discount or ignore this omission in his decision to overturn the DAB's Decision.

Furthermore, this Court assessed this Charge in the previous case (SA-18-CV-00993, Memorandum and Opinion, *ECF No. 36*) and concluded the DAB's findings showed it did not rely solely on the conflicting ratings of the two peer reviewers; the DAB's analysis of each case noted the ratings assigned by the reviewers, discussed the findings of the reviewers, considered the testimony of witnesses, and when necessary, referred to subject matter expertise provided by board members. The DAB's decision indicates the peer reviewers' ratings "are where the conversation began, not what the evidence concluded." *Savu*, 2021 WL 1615562, at *5. The Charge against Dr. Savu is one of substandard care, which is not *per se* substandard care simply

because there was no protocol for this procedure within the VA system, or because this procedure was not performed by other surgeons within the VA.

Dr. Upton did not consider this lapse in critical medical records in his assessment and weight of the evidence. Review of the Administrative Record reveals the parties provided conflicting evidence regarding the rating of the procedure, and only Dr. Savu testified, with no rebuttal evidence pertaining to the reasoning and protocol for the specific procedure performed. Consequently, the Administrative Record reveals the VA failed to introduce evidence critical to meeting its preponderance-of-the-evidence burden of proof. Dr. Upton looked only to what was in the record, yet failed to consider evidence that was lacking, but necessary to meet the VA's burden of proof. Therefore, his conclusion the DAB's decision clearly conflicts with the weight of evidence is misfocused and premised on reasoning that runs counter to the evidence.

Because Dr. Upton incorrectly assessed the evidence presented to the DAB and neglected to recognize the lack of necessary and critical evidence to satisfy the burden of proof, Dr. Upton's explanation for his decision runs counter to the evidence before [and not before] the agency. Dr. Upton's decision was premised on reasoning that fails to account for relevant factors and evinces a clear error of judgment. *See Marsh*, 490 U.S. at 378; *Univ. of Tex. M.D. Anderson Cancer Ctr.*, 985 F.3d at 475. Consequently, this Court must set aside Dr. Upton's decision with regard to this Charge as arbitrary and capricious.

### c.   Charge 2: Failure to Appropriately Plan Care, Specification 3, Case #8

#### i.      Assessment of the Essence of the Charge

In this specific Charge, Dr. Upton concludes the DAB failed to fully assess the scope of the Charge by narrowing its focus to only one of the two supporting "concerns." For this reason, Dr. Upton concluded the DAB's assessment of the evidence was flawed, and therefore, the

DAB's conclusion that the VA did not prove this specification by a preponderance of the evidence is clearly contrary to the evidence. Specifically, Dr. Upton explains the DAB incorrectly concluded the VA's "'main reason' for the specification was the 'plan of care of the surgery. Consequently, [the DAB] narrowed its deliberation, and decision, to the preoperative planning. However, the specification clearly contained a postoperative concern, lack of a documented 'follow-up plan.'"

> **Failure to Appropriately Plan Care:** Laparoscopic sleeve gastrectomy with intraoperative EGD. This is a patient with Barrett's esophagus which is a contraindication to sleeve gastrectomy. In pre-operative case conference there was discussion of the contraindication to sleeve gastrectomy. There is no documentation of a plan for follow-up for the Barrett's esophagus. These actions do not meet the STVHCS expectation for the standard of care of appropriateness of treatment, so as to raise a reasonable concern [sic] the safety of patients.

It is undisputed Dr. Savu did not provide a post-operative plan of care to monitor the patient's Barrett's esophagus for progression to cancer.

Review of the DAB Decision, alone, reveals the DAB properly assessed the essence of the Charge as Failure to Appropriately Plan Care, which included both preoperative and postoperative components. In its Decision, the DAB states, the VA's "main reasons for this specification is the plan of care of this surgery." The DAB, then, discussed the conflicting evidence, which consisted of the two reviewers' different rating assessments. The DAB specifically stated the differing ratings were based upon the reviewers' assessment of the veracity of performance of the sleeve gastrectomy procedure on the subject patient with Barrett's esophagus **and** upon the "lack of follow-up procedure." The DAB discussed the evidence presented and not presented on both "concerns" supporting this Charge. Consequently, review of

the DAB Decision, alone, reveals it did include the post-operative plan, or lack thereof, in its assessment of the essence of the Charge and in its finding the VA failed to prove the Charge by a preponderance of the evidence, contrary to Dr. Upton's conclusion.

Therefore, in his decision for reversal, Dr. Upton's decision was premised on reasoning that fails to account for relevant factors and evinces a clear error of judgment. *See Marsh*, 490 U.S. at 378; *Univ. of Tex. M.D. Anderson Cancer Ctr.*, 985 F.3d at 475.

### ii.     Assessment of Burden of Proof

In his review of the DAB decision, Dr. Upton acknowledges the VA's preponderance-of-the-evidence burden of proof. However, for two reasons, Dr. Upton, incorrectly proclaims and assesses what is required to meet this burden.

First, Dr. Upton cites an administrative opinion, *Hicks v Department of Treasury*, 62 MSPR 71, 74 (1994), for the proposition that the VA "is not required to prove every aspect of a specification. Rather, the [VA] is only required to '…prove so much of the specification as is necessary to support the essence of the charge….'" While this is a correct summary of *Hicks*, Dr. Upton incorrectly interpreted and applied *Hicks* and inaccurately determined what was required of the VA to meet its burden of proof.

In *Hicks*, the employee-appellant argued the administrative judge "split" the charge by not requiring the agency to prove each factual specification in the Charge. The Merit Protections Board held, "[a]s the administrative judge correctly found, however, the agency is required to prove only the essence of its charge, and need not prove each factual specification in support of the charge." *Hicks*, 62 MSPR at 74. In light of the preponderance-of-the-evidence burden of proof and following *Hicks*, the VA was required to produce a preponderance of evidence to

prove the essence of the Charge, that is, Dr. Savu's pre-operative and post-operative plan of care, as a whole, was substandard.

In his application of *Hicks*, Dr. Upton does exactly what *Hicks* proscribes: he splits this portion of Charge 2, Specification 3, Case #8 into two "concerns" and concludes the DAB failed to assess the evidence on one of the two "concerns": post-operative care. In his determination, Dr. Upton states, "there was unrebutted evidence . . . regarding a documented follow-up plan."[13] This is true, the parties do not dispute that Dr. Savu did not formulate a follow-up plan for this patient. However, the next statement in Dr. Upton's determination reveals his incorrect application of *Hicks*: "[t]his evidence constitutes preponderant evidence and substantiates a part of the specification. Thus the [DAB's] conclusion that [the VA] failed to satisfy its burden is clearly contrary to the evidence."

Next, it is undisputed Dr. Savu did not provide a follow-up plan; however, the issue is whether this omission constitutes substandard care. The VA produced no evidence to show or prove the lack of a follow-up plan, alone, is *per se* proof of substandard care. The Administrative Record contains only the reports of the two outside reviewers, who disagree whether this omission constitutes substandard care. In its Decision, the DAB discusses this conflicting evidence and the lack of medical records that would have helped resolve this dispute. The DAB gave more weight to Dr. Bower's Report than Dr. Nicholls's Report. However, even if the DAB weighed the two outside reviewer reports evenly, as the VA argues they should have, Dr. Upton's determination that the DAB's Decision is clearly contrary to the evidence is inevitably incorrect because the only evidence before the DAB was two evenly weighted reviewer reports.

---

[13] Taken literally, the statement does not appear consistent with Dr. Upton's contention here; however, it is presumed Dr. Upton means "it is undisputed there was no follow-up plan."

Because Dr. Upton incorrectly interpreted the DAB's assessment of the essence of the Charge, his decision of reversal is premised on reasoning that fails to account for relevant factors. This, alone, is sufficient to find Dr. Upton's reversal decision to be invalid. In addition, because Dr. Upton incorrectly applies *Hicks*, his decision of reversal is premised on reasoning that fails to account for relevant factors. This, alone, is sufficient to find Dr. Upton's reversal decision to be invalid. Finally, because Dr. Upton incorrectly assessed the weight of the evidence before the DAB and substituted his own opinion, his decision of reversal is contrary to the law and evinces a clear error of judgment. Consequently, this Court must set aside Dr. Upton's decision with regard to this Charge as arbitrary and capricious. *See Marsh*, 490 U.S. at 378; *Univ. of Tex. M.D. Anderson Cancer Ctr.*, 985 F.3d at 475.

## Conclusion

For the reasons given, the Court concludes the VA acted in an arbitrary and capricious manner when it reversed the second unanimous decision of the Disciplinary Appeals Board that is pertinent to this matter. Accordingly, the Court vacates the VA's reversal of the Disciplinary Appeals Board's decision. Upon this ruling in Dr. Savu's favor and the VA's acknowledgment, the VA is hereby ORDERED to issue a Void Report to the National Practitioner's Data Bank. This Void Report or any needed supplemental submission must have the effect of withdrawing from the National Practitioner's Data Base all reference or inference to Dr. Savu and any and all matters related to this litigation and the underlying facts and disciplinary proceedings forming the basis of this action and the previous action, No. SA-18-CV-00993, 2021 WL 1615562, at *2 (W.D. Tex., Apr. 26, 2021).

This case shall not be closed until the VA complies with this Court's Order, and the Court retains jurisdiction to enforce the VA's compliance. The parties shall jointly or independently advise this Court within 10 days of the date of this Order whether the VA issued a Void Report and all necessary documentation to the NPDB and whether the VA ensured all reference to Dr. Savu and the disciplinary proceedings, administrative proceedings, and this litigation are removed from the NPDB records. The VA is hereby warned that failure to comply with this Court's Order shall be grounds for sanctions. *See* Fed. R. Civ. P. 11.

It is so ORDERED.
SIGNED this 14th day of July, 2023.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE